UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STEVE WAYNE THOMAS

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

NUMBER 13-45-SCR

## RULING ON SOCIAL SECURITY APPEAL

Plaintiff Steve Wayne Thomas brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance and supplemental security income benefits ("SSI").

Based on the standard of review and the analysis which follows, the Commissioner's decision is affirmed.

### Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91

S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers

from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations;[1] (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of her past relevant work. If the claimant shows at step four that she is no longer capable of

---

[1] Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925.

3

performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

**Background and Claims of Error**

Plaintiff was 53 years old at the time of the administrative law judge's ("ALJ") decision.[2] Plaintiff graduated from high school and went to college for three years. Plaintiff had been employed as a mail handler clerk for the United States Postal Service, a customer service representative for a rental car company, and a juvenile counselor and tutor. AR pp. 15-21, 128, 146, 149, 160, 166-69. In his applications for disability and supplemental security income benefits, the plaintiff alleged that he became disabled in January 2010 as a result of multiple physical impairments related to diabetic neuropathy, back injury and resulting pain. AR p. 159.

After his application was denied at the initial stage, the plaintiff requested an ALJ hearing, after which the ALJ issued an

---

[2] Plaintiff's age placed him in the category of "closely approaching advanced age." 20 C.F.R. §§ 404.1563(d); 416.963(d).

unfavorable decision. AR pp. 12-31.[3] The ALJ found at the second step that the plaintiff had a combination of severe impairments - plantar fasciitis, diabetes mellitus, neuropathy, and degenerative disc disease. At the third step the ALJ specifically considered two musculoskeletal listed impairments related to the plaintiff's conditions - Listing 1.02 and Listing 1.04 - and concluded that the plaintiff's severe impairments did not meet or medically equal these listed impairments. AR pp. 57, 60.

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite his severe impairments, the plaintiff was able to do any of his past relevant work or do other work in the national economy.[4] The ALJ made a finding that the plaintiff had the remaining ability to perform sedentary work, except that he could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, stoop, kneel, and crouch, but never crawl.[5] AR p. 61. Given this RFC, and based on the

---

[3] Plaintiff exhausted his administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

[4] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 404.1545; § 416.945.

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs
(continued...)

5

testimony of vocational expert John Yin, the ALJ concluded that the plaintiff was able to engage in his past relevant work as a tutor, counselor, and customer service representative. Therefore, the ALJ found at the fourth step that the plaintiff was not disabled. AR pp. 18-23, 63.

In his appeal memorandum the plaintiff argued the following administrative errors require reversal and remand under sentence four of § 405(g): (1) the ALJ erred in according little weight to the opinions of his treating physician Dr. Thad Broussard; (2) the ALJ's finding that he could return to his past relevant work is not based on substantial evidence; and (3) the ALJ failed to consider the impact of both severe and nonsevere impairments on his ability to work.

## Analysis

**The ALJ did not err in weighing the evidence as a whole or the opinions of Dr. Broussard.**

Plaintiff's primary argument is that the ALJ erred in weighing the numerous medical reports and opinions of the doctors who treated him, the doctor who performed a consultative examination and the state agency consulting physician, Dr. Charles Lee. Plaintiff focused on the ALJ's determination to give little weight

---

[5](...continued)
are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.967(a); §416.967(a).

to the reports and opinions of his treating orthopedic physician, Dr. Broussard and great weight to the opinions of Dr. Stephen Wilson, the orthopedic doctor who performed a consultative examination on October 4, 2010. AR pp. 62-63.

The legal principles governing the review of a claim that the ALJ erred in weighing the various doctors' medical reports and opinions are well-established. Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining disability, it is well established that a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Apfel*, 209 F.3d at 455-56. An ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d at 1057.

The regulations also state that when the ALJ finds the medical opinion is not entitled to controlling weight, certain factors should be considered in deciding how much weight to give the opinion. These factors include the length of treatment, the consistency of the opinion with the record as a whole, and the treating physician's specialization. 20 C.F.R. §§ 404.1527©) and

7

(d); §§ 416.927©) and (d); SSR 96-2p;[6] *Newton*, 209 F.3d at 456. Nevertheless, the ALJ need not consider each of the factors where there is competing first-hand medical evidence and the ALJ finds that one doctor's opinion is more well-founded than another. *Id.,* at 458; *Walker v. Barnhart*, 158 Fed.Appx. 534 (5th Cir. 2005).

A medical source's opinions on some issues are not medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); § 416.927(d). Thus, a treating source's statement or opinion that the claimant is "disabled" or "unable to work," is not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. The factors set out in the regulations apply only to medical opinions, not opinions reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The ALJ's analysis and decision complied with the above law and regulations. In his decision the ALJ gave a detailed summary of the medical evidence, reports and opinions, including those of Dr. Broussard and Dr. Wilson. After considering their opinions in light of all the evidence, the ALJ gave little weight to Dr.

---

[6] TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188.

8

Broussard's opinions, great weight to those of Dr. Wilson, and less weight to the non-examining medical consultant, Dr. Lee. In reaching these conclusions the ALJ complied the relevant legal standards.

Insofar as Dr. Broussard stated in his reports that the plaintiff is "functionally disabled from gainful employment,"[7] this is not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. Therefore, the ALJ was not required to accord the statement any special significance. Because there was competing first-hand medical evidence, the ALJ also was not required to evaluate Dr. Broussard's opinions using all the factors in the regulations. Nevertheless, the ALJ adequately explained how he weighed the opinions of Drs. Broussard, Wilson and Lee, and his conclusions were supported by substantial evidence. As explained by the ALJ, Dr. Broussard's statements on the plaintiff's ability to work and other limitations were inconsistent with other evidence contained in the record as a whole.

For example, when the plaintiff was examined by Dr. Wilson on October 4, 2010, the physical examination of his back and lower extremities revealed no swelling, inflammation or muscle spasms. Dr. Wilson reported the plaintiff's orthopedic and neurological examination of the lower extremities showed no evidence of muscle atrophy or muscle weakness. Dr. Wilson also reported there was no

---

[7] AR pp. 252, 282.

subjective or objective numbness, good strength on dorsiflexion of the feet and toes bilaterally, palpable and equal pulses bilaterally, and a negative straight leg raising test in the sitting position. Plaintiff had no problem with his sacroiliac and hip joints.

Dr. Wilson also reviewed the MRI of the plaintiff's lumbar spine. This is the only MRI contained in the record and it was done on November 9, 2009. AR p. 255. Dr. Wilson stated that this test showed very minimal degenerative disc disease with narrowing of the disc space at L4-5 and L5-S1, with no evidence of foraminal impingement, as well as some very minimal anterior spurring and facet arthritis.[8] AR pp. 271-72. Dr. Wilson also noted in his report that the plaintiff was only taking over the counter medication for pain. AR p. 271.[9]

Similarly, other medical evidence in the record was consistent with Dr. Wilson's report. Plaintiff was referred to physical therapy by Dr. Broussard. In April 2010 it was reported that the plaintiff progressed, responded well and was doing better with physical therapy. AR pp. 208, 215-16, 252. Also in April 2010, the foot specialist, Dr. Qui Tan Le, who was treating the plaintiff

---

[8] The results of the MRI were normal except for some mild bulging of the disc and mild arthritic changes at L4-5 and L5-S1. AR p. 255.

[9] See also, AR p. 201 (no prescription medication listed for pain); AR p. 278 (Dr. Broussard stated the plaintiff was on no medication at that time from his office).

for his diabetic neuropathy, stated that the condition could cause unsteady gait and falling if the plaintiff engaged in prolonged standing on hard surfaces. Dr. Le's treatment records do not show that he ever limited the plaintiff's in any other activities, such as his ability to sit. AR pp. 235-44, 249.[10]

The records of Dr. George Jiha of the Spine Diagnostic and Pain Treatment Center from November 5 to December 13, 2010 included the following notations: with medication the plaintiff's diabetic neuropathy pain was better, no acute distress; upright sitting posture; normal lordosis standing posture; no instability; straight leg raise/Patrick's test negative bilaterally. AR pp. 299-44, 307, 314, 316, 321. The state agency, non-examining medical consultant, Dr. Lee reviewed all the treatment records and reports, test results, plaintiff's daily activities, and the report of Dr. Wilson, and concluded that the plaintiff could perform sedentary work with some postural limitations.[11]

Finally, the plaintiff's disability report and hearing testimony also provided evidence that the plaintiff was still able to live by himself and drive his car. He was able to do some

---

[10] In November 2009 and March 2010, the records of physiatrist Dr. John Nyboer and Dr. Broussard also reflected that the plaintiff's pain was increased with walking and standing. Dr. Broussard stated in his evaluation on March 3, 2010 that the plaintiff's work activities should involve more sitting than standing and a reduction in the amount of walking. AR pp. 246, 254.

[11] AR pp. 33-42 (Dr. Lee's evaluation dated October 15, 2010).

11

cooking/meal preparation and household chores, attend church services, visit some family members, and shop once a week for 30 to 45 minutes at a time. AR pp. 25-30, 176-78.

The analysis above demonstrates that the record contains substantial evidence to support the ALJ's decision to give less weight to the conclusory opinions of Dr. Broussard and more weight to Drs. Wilson and Lee, and that in weighing the evidence the ALJ applied the proper legal standards. The evidence cited above also shows that the ALJ's RFC finding was supported by substantial evidence.

**The ALJ's finding at step four that the plaintiff could return to past relevant work is based on substantial evidence.**

With regard to this claim of error, the plaintiff relied on his testimony and other evidence describing the exertional requirements of his past work as he actually performed it.[12] Plaintiff argued that the ALJ's finding of a sedentary RFC with some postural limitations, clearly would prevent him from being able to lift the amount of weight required in his past employment as a post office mail handler, customer service representative, and juvenile counselor.

Given the legal standards that govern at the fourth step of the disability analysis, the plaintiff's argument is without merit.

---

[12] Record document number 11, Memorandum in Support of Plaintiff's Appeal, pp. 13-14.

Under §§ 404.1560(b)(2) and 416.960(b)(2) and the case law, it is well-established that a determination of whether a claimant can do his or her past relevant work may rest on descriptions of past work as actually performed or as generally performed in the national economy. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Khawaja v. Shalala*, 20 F.3d 1170 (5th Cir. 1994); *Cooper v. Barnhart*, 55 Fed.Appx. 716 (5th Cir. 2002); *Alexander v. Astrue*, 412 Fed.Appx. 719 (5th Cir. 2011). Therefore, even if the ALJ erred in concluding that the plaintiff's RFC would not prevent him from doing past work as it was actually performed, this error is harmless.[13] In this case the ALJ also found that the plaintiff could perform his prior work as a tutor, counselor and customer service representative as generally performed in the national economy. AR p. 63. The vocational expert testified that as generally performed in the national economy, the exertional level required in the positions of tutor, counselor, and customer representative would be sedentary. AR pp. 21-23. This evidence constitutes substantial evidence to support the ALJ's finding that the plaintiff could perform these past jobs as they are generally

---

[13] The primary policy underlying the harmless error rule is to preserve judgments and avoid waste of time. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Thus, procedural perfection in administrative proceedings is not required. A judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

performed in the national economy, and therefore, is not disabled at the fourth step.

**Plaintiff's argument that the ALJ failed to consider the impact of both severe and nonsevere impairments on the plaintiff's ability to work is not supported by the record.**

Plaintiff argued that in determining whether he could return to his past relevant work, evidence that he suffered from bone spurs and facet arthritis was ignored by the ALJ. Review of the ALJ's analysis and decision shows that the ALJ did not fail to properly consider this evidence.

Although the plaintiff argued there is a possibility these nonsevere impairments may have aggravated his back condition making it less likely that he could return to his past work, the plaintiff did not cite to any medical or other evidence that the impairments exacerbated his pain. Moreover, as acknowledged by the plaintiff, the ALJ included these conditions in his review of the evidence, which demonstrates that he was aware of and considered them in his analysis. AR p. 59. The medical reports and opinions that the ALJ relied on to determine the plaintiff's RFC, also took the impairments into account in evaluating the plaintiff's limitations. Thus, this final claim of error is unsupported and provides no basis to reverse the ALJ's decision.

## Conclusion

On judicial review the court cannot reweigh the evidence,

resolve conflicts in the evidence or substitute its judgment for that of the Commissioner. Therefore, regardless of the fact that the plaintiff can point to evidence in the record which supports his claims, as long as substantial evidence exists to support the Commissioner's decision it must be affirmed.[14] Review of the administrative record as a whole and the analysis above demonstrates that: (1) the proper legal standards were applied to evaluate the plaintiff's claim for disability and SSI benefits; and, (2) substantial evidence supports the Commissioner's conclusion that the plaintiff is not disabled. Under sentence four of § 405(g) the final decision of the Commissioner is affirmed.

Baton Rouge, Louisiana, April 28, 2014.

*signature*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[14] Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position this is not a ground for reversal. As long as the finding or decision is supported by substantial evidence in the record as a whole it must be affirmed. § 405(g); see, Carroll v. Dept. Health, Ed. and Welfare, 470 F.2d 252, 254, n. 4 (5th Cir. 1972)(as long as there is substantial evidence to support the Commissioner's determination, the quantity of evidence submitted by the claimant is irrelevant in terms of judicial review); Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001); Palomino v. Barnhart, 515 F.Supp.2d 705, 710 (W.D. Tex. 2007), citing, Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision upheld as long as there is substantial evidence to support it).